FILED
2013 Nov-20 PM 03:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| TRACY TERRELL, as Personal Representative and Amdministrator of the Estate of LEONARD BOBBY TERRELL, Deceased, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 6:12-CV-02390-LSC |
| DAMON MOTOR COACH CORP., et al, | ) ) ) ) | |
| Defendants. | ) | |

_____

| | | |
|---|---|---|
| VIRGINIA STOVALL, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 6:12-CV-02395-LSC |
| DAMON MOTOR COACH CORP., et al | ) ) ) ) | |
| Defendants. | ) | |

MEMORANDUM OF OPINION

These consolidated cases consist of numerous product liability claims against the manufacturer of a recreational vehicle ("RV") and a generator attached to that vehicle. They stem from an unfortunate incident in which Plaintiff Virginia Stovall

("Stovall") and Plaintiff Tracy Terrell's father ("Terrell," collectively, "Plaintiffs") suffered carbon monoxide ("CO") poisoning in the RV. Before the Court are two motions for summary judgment, filed by Defendant Generac Power Systems, Inc. ("Generac"), and by Defendant Thor Motor Coach, Inc. ("Thor").[1] Each of these parties contends that the statute of repose found in the Tennessee Products Liability Act bars Plaintiffs' claims against it. This Court agrees, so summary judgment is due to be GRANTED for both Defendants.

I. Background

   A. Facts

Stovall and Terrell bought a 1995 Damon Intruder mobile home in March of 2010 from an individual named Frank Sanderson ("Sanderson.") In August of the same year, they drove it to the Longest Yard Sale in Pikeville, Tennessee. They stayed in Pikeville for several days, attempting to sell merchandise at the yard sale. During their stay, both Stovall and Terrell began to exhibit classic symptoms of CO exposure, including headaches, nausea, diarrhea, and dizziness.

By the evening of August 8, 2010, Stovall and Terrell were sick enough that they decided to go home to Alabama the next morning. During that night, Stovall awoke

---

[1] Thor was formerly known as Damon Motor Coach Corp., and the style of the case reflects the previous name.

and began blowing the RV's horn for help. Other campers called 911, and paramedics arrived to find Terrell dead at the scene. Stovall was transported to Chattanooga, where she was treated for CO poisoning.

An inspection revealed that the RV's generator, manufactured by Generac, had a large hole in its muffler caused by rust. This allowed CO, an exhaust product of the generator's engine, to enter the cabin of the RV. The RV was equipped with a CO detector, but its fuse had been removed, rendering it inoperable. Later testing of the detector showed that it would have worked if the fuse had been replaced.

Generac, Thor, and Atwood Mobile Products, LLC, ("Atwood"), the manufacturer of the CO detector, each provided warnings about CO in manuals or instruction sheets meant to be included with the RV. These manuals were not with the RV when Stovall and Terrell purchased it. There were no warnings located on the generator, on the detector, or on any part of the RV. Terrell and Stovall did not use the generator prior to the trip to Tennessee, nor did they have any maintenance work done on the generator or other relevant systems of the RV prior to the trip.

Stovall and Terrell were apparently unaware of the dangers of CO and the symptoms caused by CO poisoning. Stovall does not remember smelling any fumes on the night Terrell died, although other campers at the Longest Yard Sale said they smelled such fumes. She also stated in her deposition that she had never heard of

carbon monoxide, but that she and Terrell would have turned off the generator after their symptoms started if they had been properly warned.

### B. Procedural Background

Terrell's son and Stovall each filed suit in state court in Marion County, Alabama in August of 2011. These suits were filed against Generac, Thor, and Sanderson. Sanderson moved for summary judgment, and Plaintiff did not oppose his motion. The state court dismissed all claims against Sanderson on June 25, 2012.

Since Sanderson was the only party from Alabama, Defendants removed the cases to this Court based on diversity jurisdiction. Defendants' notices of removal were filed on July 3, 2012, and the cases were consolidated in this Court on August 13, 2012. No motion to remand was filed. Plaintiffs amended their complaint to add a claim against Atwood, but later voluntarily dismissed that claim. Therefore, only claims against Generac and Thor are pending.

Plaintiffs' claims, read at their broadest, include claims for negligent manufacture of the RV and the generator, sale of the RV and generator in a defective condition, negligent attachment of the generator to the RV, breach of the warranties of merchantability and fitness for a particular purpose, and negligent failure to warn.

## II. Summary Judgment Standard

Summary judgment is proper "if the pleading, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the movant has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "Where the non-movant presents direct evidence that, if believed by the jury, would be sufficient to win at trial, summary judgment is not appropriate even where the

movant presents conflicting evidence. It is not the court's role to weigh conflicting evidence or to make credibility determination . . . ." *Mize*, 93 F.3d at 742. But when the non-movant's evidence cannot stand on its own, summary judgment is appropriate: "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

III. Choice of Law Issues

    A. Tennessee Substantive Law Governs

A federal court sitting in diversity must apply the choice of law rules of the state in which it sits. *U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.*, 550 F.3d 1031, 1033 (11th Cir. 2008) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Alabama follows traditional choice of law principles, including the application of *lex loci delicti,* or the law of the place of injury, to tort claims such as those in this case. *Fitts v. Minn. Min. & Mfg. Co.*, 581 So. 2d 819, 820 (Ala. 1991). Neither party disputes that the injury at issue in this case took place in Tennessee, or that, accordingly, the substantive law of Tennessee governs the action.

    B. Substance vs. Procedure

The statute of repose found in the Tennessee Products Liability Act presents

a more complex choice of law issue. *See* Tenn. Code Ann. § 29-28-103(a). This statute bars products liability actions commenced more than ten years from the first sale of the product. *Id.* Such actions are broadly defined to include negligence, breach of warranty, and failure to warn claims. Tenn. Code Ann. § 29-28-102(6). Since the RV, equipped with the generator, was first sold in 1995, all of Plaintiffs' claims are barred if the statute of repose applies.

Alabama applies its own law to procedural matters, even where another state's substantive law governs the action. *Etheredge v. Genie Indus., Inc.*, 632 So. 2d 1324, 1326 (Ala. 1994) ("we will enforce only those laws of the other state that are substantive"). Statutes of limitations and other time bars are generally interpreted as procedural. *Id.* (citing Robert A. Leflar, et al., American Conflicts Law 348 (1986) ("by legal tradition, most statutes of limitation are deemed procedural")). The Alabama Supreme Court has noted two instances in which this presumption should be overcome and the time bar of the foreign state applied: 1) when that state has declared the time bar to be part of its public policy (*see Bodnar v. Piper Aircraft Corp.*, 392 So. 2d 1161, 1162-63 (Ala. 1980)), and 2) when the time bar "is so inextricably bound up in the statute creating the right that it is deemed a portion of the substantive right itself." *Etheredge,* 632 So. 2d at 1324.

Although originally stated as alternative circumstances, the Alabama Supreme

Court seems to have combined these tests in *Sanders v. Liberty Nat. Life Ins. Co.*:

> Alabama courts will only apply another state's statute of limitations when it is demonstrated that 'the limitation is so inextricably bound up in the statute creating the right that it is deemed a portion of the substantive right itself.' *Department of Revenue v. Lindsey*, 343 So. 2d 535, 537 (Ala. Civ. App. 1977). In other words, the limitation must be found to be a part of the public policy of the other state. *See Bodnar* . . . .

443 So. 2d 909, 912 (Ala. 1983). The public policy aspect of the test has generally relied on statements from the highest court of the foreign state. *Bodnar*, 392 So. 2d at 1163 (noting that the Georgia Supreme Court "ha[d] declared the two-year period stated in Ga. Code s 3-1004 to be 'the public policy' of that state") (citing *Taylor v. Murray*, 204 S.E.2d 747, 749 (Ga. 1974)).

The Tennessee Supreme Court has not specifically stated that the statute of repose found in the TPLA represents the public policy of Tennessee. It has, however, made it clear that substantive public policy reasons caused the Tennessee General Assembly to include the statute of repose in the TPLA. *See Penley v. Honda Motor Co.*, 31 S.W.3d 181, 187 (2000). The preamble to the TPLA includes the following paragraph:

> Whereas in enacting this act, it is the purpose of the General Assembly to provide a reasonable time within which action may be commenced against manufacturers and/or sellers while limiting the time to a specific period of time for which product liability insurance premiums can be reasonably and accurately calculated.

Id. (citing 1978 Tenn. Pub. Acts ch. 703 preamble). The *Penley* Court went on to say that "[t]he legislature considered the limitation of future liability to a reasonable and specific period to be one of the most important keys in solving the perceived products liability crisis." *Id.* Without using the terms "public policy," the Tennessee Supreme Court has thus made it clear that the statute of repose is part of the public policy of that state. Therefore, under *Bodnar*, an Alabama court, including this Court sitting in diversity, should apply the statute of repose to bar Plaintiffs' claims.

This conclusion is bolstered by examining whether the statute of repose "is so inextricably bound up in the statute creating the right that it is deemed a portion of the substantive right itself." *Etheredge*, 632 So. 2d at 1324. Alabama law defines a "statute of creation" as one which "creates a new right of action with an express restriction on the time within which an action may be brought to enforce the right." *Cofer v. Ensor*, 473 So. 2d 984, 987 (Ala. 1985). The statute of repose at issue here is "inextricably bound up" in the Tennessee Products Liability Act, which contains substantive law defining the right of Tennesseans to recover in products liability actions. For example, Section 105 requires that a product be defective or unreasonably dangerous at the time it leaves the manufacturer or seller's control for liability to exist. *Id.* § 29-28-105. The statute of repose is "inextricably bound up" with these substantive requirements because it was passed as part of the same law and is codified in the same chapter. *See*

*Etheredge*, 632 So. 2d at 1326. As noted above, the Tennessee Supreme Court and the General Assembly have also both stated that the time bar embodied in the statute of repose represents a central purpose of the TPLA. *Penley*, 31 S.W.3d at 187.

Plaintiffs argue that the TPLA cannot be a statute that creates a new right of action because "product liability claims . . . were viable common law causes of action in Tennessee prior to 1978." *Charter Oak Fire Ins. Co. v. Broan Nutone, LLC*, 348 F. Supp. 2d 934 (W.D. Tenn. 2004) (applying Connecticut choice of law principles, which explicitly classified statutes of repose as substantive or procedural based on whether the underlying cause of action existed at common law). Alabama courts have never made this explicit distinction in the choice of law context. Although similar actions were possible in Tennessee prior to the passage of the act, it can reasonably be argued that the TPLA changed such actions, creating and defining a specific new cause of action under the act. The Tennessee General Assembly clearly intended the act to change the way products liability actions were brought in Tennessee, and the statute of repose was central to the newly-defined statutory right of action. *See Penley*, 31 S.W.3d at 187. Thus the Tennessee statute of repose is substantive according to Alabama's choice of law principles.

C. The Public Policy Exception

While the *Bodnar* test described above asked whether the statute of repose

represented the public policy of Tennessee, Plaintiffs argue that the public policy of Alabama bars enforcement of the Tennessee statute. The idea of an exception to *lex loci delicti* allowing Alabama to avoid applying the public policy of another state has long been mentioned by Alabama courts. *See, e.g., Caine v. St. Louis & S.F.R. Co*, 95 So. 876, 877 (Ala. 1923) (stating that another state's laws will be enforced in a proper case "if not against the public policy of the laws of the state where redress is sought"). This exception has proven quite narrow in practice, however, and "should be applied only in rare circumstances." *San Francisco Residence Club, Inc. v. Baswell-Guthrie*, 897 F. Supp. 2d 1122, 1172 (N.D. Ala. 2012) (finding such an exception embodied in the Alabama Legal Services Liability Act, and stating that the exception is more likely to apply when public policy has been "memorialized in a statute").

The argument in favor of a public policy exception in this case rests on *Lankford v. Sullivan, Long, & Hagerty*, in which the Alabama Supreme Court determined that a ten year products liability statute of repose enacted by the Alabama state legislature violated the state Constitution. 416 So. 2d 996, 1000-02 (Ala. 1982). The *Lankford* Court clearly ruled that section 13 of the Alabama constitution limited the state legislature's ability to abolish or alter a common law cause of action. *Id.* at 999-1000. According to the Court, the legislature may constitutionally take such action only if "1. The right is voluntarily relinquished by its possessor in exchange for equivalent

benefits or protection, or 2. The legislation eradicates or ameliorates a perceived social evil and is thus a valid exercise of the police power." *Id.* at 1000.

Focusing on the second prong, the Court found that the statute of repose did not bear a substantial relationship with the "social evil" the legislature wished to fight, a perceived crisis in product liability insurance rates and availability. *Id.* at 1001. The *Lankford* Court explicitly stated that "the only provision before the court is one of power." *Id.* at 1000. Thus the Court expressly declined to address the statute of repose in policy terms; it did not matter whether the statute of repose represented a wise policy choice, because the Alabama constitution forbade the legislature from making this choice. *Id.*

*Lankford* simply cannot answer the question of whether an Alabama court would impose another state's statute of repose. The Alabama Supreme Court, of course, cannot rule on the power of the Tennessee General Assembly to enact a similar statute. It may be presumed that any statute or judicial decision, at some level, reflects the policy concerns of those who wrote it. This cannot mean, however, that every time Alabama's policy choices conflict with those of another state, *lex loci delicti* is abandoned. *See Garnett v. Allstate Ins. Co.*, 567 So. 2d 1265, 1267 (Ala. 1990); *Ailey v. Nationwide Mut. Ins. Co.*, 570 So. 2d 598, 599-600 (Ala. 1990); *Caine*, 95 So. 2d at 877 (all enforcing another state's law that was contradictory to Alabama law). Alabama

courts have applied this exception so rarely that they provide very little guidance on when a public policy difference rises to the level of barring the application of another state's law.

Plaintiffs cite no case in which the Alabama Supreme Court has held that another state's statute of repose, or any other foreign statute, violates public policy to the extent that it is unenforceable. This Court, likewise, could find no Alabama case declaring that another state's statute of repose violated public policy. Where the Alabama courts have used the public policy exception to avoid the application of another state's law, these decisions have been based on Alabama statutes that conflict with judicial decisions of other states. *See, e.g., Wixom Bros. Co. v. Truck Ins. Exchange*, 435 So. 2d 1231 (Ala. 1983); *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506-07 (Ala. 1991) (refusing to enforce choice-of-law clause that would have validated covenant not to compete, based on Alabama statute barring such covenants). In some cases, however, the Alabama Supreme Court has determined that Alabama's statutory choices do not preclude it from applying the contrary choices of other states. *Cherokee Ins. Co. v. Sanches*, 975 So. 2d 287, 294 (Ala. 2007) ("we do not discern any legislative intent that the public policies encompassed in our UM statute were intended to take precedence over those of sister states").

In addition, the cases applying the public policy exception are apparently all

contract cases, especially the enforcement of choice of law clauses. *See e.g.*, *Brown*, 582 So. 2d at 506-07. Alabama has shown less willingness to move away from *lex loci delicti* than *lex loci contractus*. *See Fitts*, 581 So. 2d at 823 (declining to make an exception on "public policy grounds" in a wrongful death case). In tort cases, the Alabama Supreme Court has applied foreign law even where that law bars recovery. *Id.*; *Norris v. Taylor*, 460 So. 2d 151, 152-53 (Ala. 1984) (applying Kentucky law, which did not allow suits against co-workers for negligence, to bar claim). In *Norris*, it could have been argued that applying the Kentucky law, which barred the suit entirely, violated art. 1, § 13 of the Alabama constitution, but this issue was never discussed. *Id.* In fact, the Alabama Supreme Court has never applied § 13 in any choice of law case. Therefore, even though *Lankford* stands for the proposition that the Alabama legislature cannot pass a law like the Tennessee statute of repose, neither it nor any other Alabama precedent suggests that Alabama courts would not apply a sister state's statute of repose. *See McSween v. Newmar Corp.*, 2011 WL 5076257 at *2-3 (Aug. 26, 2011, S.D. Ala.) (likewise finding no Alabama precedent to support a public policy exception to *lex loci delicti* for a products liability statute of repose).

IV. Conclusion

Summary judgment is proper on all of Plaintiffs' claims because they are barred by the Tennessee statute of repose. *See Penley*, 31 S.W. 3d at 181 (affirming summary

judgment where suit was filed after the running of the statute). The statute of repose bars all products liability claims brought more than ten years " from the date on which the product was first purchased for use or consumption." Tenn. Code Ann. § 29-28-103. All of plaintiffs' claims are the type covered by the Tennessee Products Liability Act. Tenn. Code. Ann. § 29-28-102 (6) (broadly defining " products liability action" to include all claims for negligent manufacture, negligent design, failure to warn, and breach of warranty, among others). Neither party disputes that the RV at issue, with the generator attached, was first sold to a consumer on March 24, 1995. (Doc. 51-8 at 10). The two lawsuits consolidated in this action commenced on August 5, 2011, and August 8, 2011, more than ten years after the first sale. Thus, summary judgment in favor of the Defendants is due to be granted. A separate order will be entered.

Done this 20th day of November 2013.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
174310